## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TEXAS
## SAN ANTONIO DIVISION

| | | |
|---|---|---|
| CHRIS HOWARD, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | CV. NO. SA-12-CV-00440-DAE |
| | ) | |
| JP MORGAN CHASE NA, | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

ORDER: (1) GRANTING DEFENDANT'S MOTION FOR JUDGMENT ON
THE PLEADINGS; (2) DENYING PLAINTIFF'S MOTION FOR LEAVE OF
COURT TO AMEND; (3) DENYING AS MOOT PLAINTIFF'S MOTION TO
COMPEL; (4) DISMISSING THE ACTION WITH PREJUDICE

Before the Court is Defendant JPMorgan Chase Bank, N.A.'s Motion

for Judgment on the Pleadings (doc. # 13), Plaintiff Chris Howard's Motion for

Leave of Court to file his proposed Second Amended Complaint (doc. # 29), and

Plaintiff's Motion to Compel (doc. # 33).  After reviewing the motions and the

supporting and opposing memoranda, the Court **GRANTS** Defendant's Motion for

Judgment on the Pleadings, **DENIES** Plaintiff's Motion for Leave of Court to

Amend Pleadings, and **DENIES AS MOOT** Plaintiff's Motion to Compel.  This

action is **DISMISSED WITH PREJUDICE**.

1

<u>BACKGROUND</u>

According to the First Amended Complaint and documents incorporated by reference therein,[1] on or about February 22, 2007, Michelle Lynn Brown and Plaintiff Chris Howard ("Plaintiff") entered into a loan transaction for $167,000 with Fremont Investment & Loan which was secured by a mortgage encumbering real property located at 2506 Rockaway Lane, San Antonio, Texas 78232 (the "Subject Property"). ("FAC," Doc. # 7 ¶ 3.) The promissory note (the "Note") was issued on February 22, 2007, listing Fremont Investment & Loan as the lender. (Doc. # 31.) The Deed of Trust was recorded in the Official Public Records of Bexar County on February 23, 2007. ("MJOP," Doc. # 13, Ex. A.) Fremont Investment & Loan is listed on the Deed of Trust as the lender, and Mortgage Electronic Registration Systems, Inc. ("MERS") is listed as the

---

[1] Defendant JPMorgan Chase Bank, N.A. has submitted copies of Plaintiff's February 22, 2007 Deed of Trust and the assignment of the Deed of Trust to Defendant in its Motion for Judgment on the Pleadings. (Doc. # 13, Ex. A & B.) The Supreme Court has held that in deciding a motion to dismiss, a court may consider documents incorporated into the complaint by reference. <u>Tellabs, Inc. v. Makor Issues & Rights, Ltd.</u>, 551 U.S. 308, 322 (2007). By attaching documents to a motion to dismiss that are referred to in a plaintiff's complaint and that are central to his claim, "the defendant merely assists the plaintiff in establishing the basis of the suit, and the court in making the elementary determination of whether a claim has been stated." <u>Collins v. Morgan Stanley Dean Witter</u>, 224 F.3d 496, 499 (5th Cir. 2000). In this case, both the Deed of Trust and the assignment are central to Plaintiff's claims and are properly considered by this Court.

mortgagee "acting solely as a nominee for Lender and Lender's successors and assigns." (Id.)  MERS assigned the Deed of Trust to Defendant JPMorgan Chase Bank, N.A. ("Defendant") on October 31, 2011.  (Id. Ex B.)  The assignment was recorded in the Official Public Records of Bexar County on November 11, 2011. (Id.)  On or around May 1, 2012, Defendant attempted to foreclose on the Subject Property.  (Doc. # 1, Ex. A-3.)

On April 26, 2012, Plaintiff filed a complaint in state court challenging the assignment of the Deed of Trust and seeking injunctive relief preventing Defendant from foreclosing on the Subject Property.  (Id.)  On May 8, 2012, Defendant removed the case to federal court.  (Doc. # 1.)  On July 20, 2012, Plaintiff filed the First Amended Complaint ("FAC"), seeking to prevent Defendant from foreclosing on the Subject Property by asserting "causes of action" for (1) declaratory relief, (2) "UCC violations," (3) quiet title, and (4) injunctive relief.  (See FAC.)

On October 24, 2012, Defendant filed a Motion for Judgment on the Pleadings.  (MJOP.)  On November 7, 2012, Plaintiff filed a Motion for Leave of Court to Amend, seeking to file a proposed Second Amended Complaint.  (Doc. # 14.)  On November 8, 2012, Plaintiff filed a Response to Defendant's Motion for Judgment on the Pleadings.  (Doc. # 17.)  On November 15, 2012, Defendant filed

3

a Response to Plaintiff's Motion for Leave of Court to Amend.  (Doc. # 18.)  On

November 16, 2012, Defendant filed a Reply to Plaintiff's Response to

Defendant's Motion for Judgment on the Pleadings.  (Doc. # 24.)  On the eve of

the hearing on the Motion to Dismiss, on January 22, 2013, Plaintiff filed a second

Motion for Leave of Court to Amend, seeking to file a different proposed Second

Amended Complaint.  (Doc. # 29.)  A hearing on the Motion to Dismiss was held

on January 23, 2013.  At the hearing, Defendant produced the original Note,

indorsed in blank.  (Doc. # 31.)  On January 29, 2013, Defendant filed a Response

to the second Motion for Leave of Court to Amend.  (Doc. # 32.)

        On February 18, 2013, Plaintiff filed a Motion to Compel.  (Doc.

# 33.)  On February 22, 2013, Defendant field a response.  (Doc. # 35.)

STANDARD OF REVIEW

I.      Rule 12(c)

        Rule 12(c) states, "[a]fter the pleadings are closed—but early enough

not to delay trial—a party may move for judgment on the pleadings."  Fed. R. Civ.

P. 12(c).  The standard for deciding a Rule 12(c) motion is the same as a Rule

12(b)(6) motion to dismiss.  In re Katrina Canal Breaches Litig., 495 F.3d 191, 205

(5th Cir. 2007).

"A motion brought pursuant to Fed. R. Civ. P. 12(c) is designed to dispose of cases where the material facts are not in dispute and a judgment on the merits can be rendered by looking to the substance of the pleadings and any judicially noticed facts." Great Plains Trust Co. v. Morgan Stanley Dean Witter & Co., 313 F.3d 305, 312 (5th Cir. 2002) (citations omitted). "[T]he central issue is whether, in the light most favorable to the plaintiff, the complaint states a valid claim for relief." Id. (citations omitted). Review is limited to the contents of the complaint and matters properly subject to judicial notice. See Tellabs, Inc. v. Makor Issues & Rights, Ltd., 551 U.S. 308, 322 (2007). In analyzing the complaint, "[t]he court accepts 'all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff.'" In re Katrina Canal Breaches Litig., 495 F.3d at 205 (quoting Martin K. Eby Constr. Co. v. Dallas Area Rapid Transit, 369 F.3d 464, 467 (5th Cir. 2004)). The plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).

II.    Rule 9(b)

Rule 9(b) requires that "[i]n alleging fraud or mistake, a party must

5

state with particularity the circumstances constituting fraud or mistake." Fed. R.

Civ. P. 9(b).  Although the exact pleading requirements for Rule 9(b) are

case-specific, see Guidry v. Bank of LaPlace, 954 F.2d 278, 288 (5th Cir. 1992),

the Fifth Circuit "requires that the plaintiff allege 'the particulars of time, place,

and contents of the false representations,' as well as the identity of the person

making the misrepresentation and what that person obtained thereby, otherwise

referred to as the 'who, what, when, where, and how' of the alleged fraud." U.S.

ex rel. Willard v. Humana Health Plan of Tex., Inc., 336 F.3d 375, 384 (5th Cir.

2003) (citations omitted).

ANALYSIS

For the reasons stated below, the Court finds that the FAC rests on

flawed legal theories and inadequate, speculative factual allegations.  The Court

therefore **GRANTS** Defendant's Motion for Judgment on the Pleadings.  (Doc.

# 13.)  Additionally, because Plaintiff has not shown good cause for amendment

and because the proposed Second Amended Complaint fails to state a claim, the

Court **DENIES** Plaintiff's Motion for Leave of Court to Amend Pleadings.  (Doc.

# 29.)  Plaintiff's Motion to Compel is **DENIED AS MOOT**.  (Doc. # 33.)

I.     Bifurcation Theory

Throughout the FAC, Plaintiff repeatedly asserts that Defendant must

be the owner or holder of the Note in order to foreclose on the Subject Property. Thus, before discussing the merits of Plaintiff's various causes of action, the Court addresses this flawed legal theory, which has been roundly rejected by both federal and state courts in Texas.  See Swim v. Bank of Am., N.A., No. 3:11-CV-1240-M2012, 2012 WL 170758, at *3 n.25 (N.D. Tex. Jan 20, 2012) (collecting cases).

        As a preliminary matter, Texas law differentiates between enforcement of a promissory note and a deed of trust.  "Where there is a debt secured by a note, which is, in turn, secured by a lien, the lien and the note constitute separate obligations."  Aguero v. Ramirez, 70 S.W.3d 372, 374 (Tex. App. 2002).  Thus, the right to recover on the promissory note and the right to foreclose may be enforced separately.  See Stephens v. LPP Mortg., 316 S.W.3d 742, 747 (Tex. App. 2010) (finding that the promissory note and the lien which secures it are "separate legal obligations" that "may be litigated in separate lawsuits"); Carter v. Gray, 125 Tex. 219, 81 S.W.2d 647, 648 (Tex. 1935) ("It is so well settled as not to be controverted that the right to recover a personal judgment for a debt secured by a lien on land and the right to have a foreclosure of lien are severable, and a plaintiff may elect to seek a personal judgment without foreclosing the lien, and even without a waiver of the lien.").  Foreclosure is an independent action against the collateral and may be conducted without judicial

supervision.  <u>Bierwirth v. BAC Home Loans Servicing, L.P.</u>, No. 03-11-00644-CV, 2012 WL 3793190, at *4 (Tex. App. Aug. 30, 2012) (citing <u>Reardean v. CitiMortgage, Inc.</u>, No. A-11-CA-420-SS, 2011 WL 3268307, at *3 (W.D. Tex. July 25, 2011)).  Enforcement of the promissory note, on the other hand, is a personal action against the signatory and requires a judicial proceeding.  <u>Id.</u>

Chapter 51 of the Texas Property Code, which governs non-judicial foreclosures, authorizes either a mortgagee or a mortgage servicer acting on behalf of a mortgagee to sell real property under a "power of sale conferred by a deed of trust."  <u>See</u> Tex. Prop. Code. §§ 51.002, 51.0025.  The Property Code defines a "mortgagee" as "(A) the grantee, beneficiary, owner, or holder of a security instrument; (B) a book entry system;[2] or (C) if the security interest has been assigned of record, the last person to whom the security interest has been assigned of record."  Tex. Prop. Code § 51.0001(4).

While courts agree that production of the original promissory note is not necessary to foreclose,[3] district courts are divided as to whether the mortgagee

---

[2]  A "book entry system" is defined as "a national book entry system for registering a beneficial interest in a security instrument that acts as a nominee for the grantee, beneficiary, owner, or holder of the security instrument and its successors and assigns."  Tex. Prop. Code § 51.0001(1).

[3]  Courts have repeatedly recognized that Texas law allows either a mortgagee or a mortgage servicer to administer a deed of trust foreclosure without

needs to be, at a minimum, authorized to act on behalf of the owner or holder of the promissory note in order to administer a deed of trust foreclosure.  See Routh v. Bank of Am., N.A., No. SA-12-CV-244, 2013 WL 427393, at *6 (W.D. Tex. Feb. 4, 2013) (gathering cases); compare Kramer v. Fed. Nat. Mortg. Ass'n, No. A–12–CA–276–SS, 2012 WL 3027990, at *7 (W.D. Tex. May 15, 2012) (holding that because the Property Code does not explicitly reference the promissory note, a party seeking to foreclose need not establish any authority from the owner or holder of the note prior to foreclosure) with McCarthy v. Bank of Am., NA, No. 4:11–CV–356–A, 2011 WL 6754064, at *4 (N.D. Tex. Dec. 22, 2011) ("[I]nherent in the procedural steps outlined in the Texas Property Code is the assumption that whatever entity qualifies as a 'mortgagee' either owns the note or is serving as an agent for the owner or holder of the note.").

        In the instant case, Defendant satisfies even the more stringent reading of the Property Code requiring that it be an agent of the owner or holder of the Note in order to administer the deed of trust foreclosure.  According to the Deed of Trust, MERS is a "mortgagee" as defined in the Property Code because the Deed of Trust identifies MERS as the beneficiary and nominee for lender Fremont

---

production of the original promissory note.  See, e.g., Bierwirth, 2012 WL 3793190, at *3–5; Crear v. JP Morgan Chase Bank N.A., No. 10–10875, 2011 WL 1129574, at *1 n.1 (5th Cir. Mar. 28, 2011) (per curiam).

Investment & Loan and its successors and assigns.  (See MJOP Ex. A.)  As a

mortgagee, MERS is entitled to foreclose on the Subject Property on behalf of the

lender.  See Tex. Prop. Code. §§ 51.002, 51.0025.  Additionally, the Deed of Trust

itself expressly grants MERS authority "to foreclose and sell the Property."  (Id.)

Texas courts have affirmed that provisions granting MERS the authority to

foreclose are enforceable to the extent of the terms set forth in deed of trust.  See

Bierwirth, 2012 WL 3793190, at *4; Athey v. Mortg. Elec. Registration Serv.,

L.P., 314 S.W.3d 161, 166 (Tex. App. 2010).  In this case, MERS assigned "all

beneficial interest under . . . [the] Deed of Trust" to Defendant. (MJOP Ex. 2.)

Thus, as long as MERS validly assigned its interest to Defendant, Defendant is

properly authorized to foreclose on behalf of the holder or owner of the Note in

this case.  Plaintiff's assertion that MERS' assignment of the Deed of Trust was

invalid because it "only transfers the Deed of Trust" and "does not transfer the

[N]ote or prove that the Defendant is the holder"[4] fails as a matter of law.

Defendant is not required to be the holder of the Note in order to institute a deed of

trust foreclosure.

Moreover, even accepting Plaintiff's premise that Defendant is

required to be the holder of the Note, Defendant produced the original Note,

---

[4] FAC ¶ 5.

indorsed in blank, at the hearing on the Motion to Dismiss. (<u>See</u> doc. # 31.) Under Texas law, physical possession of a promissory note that bears a blank indorsement establishes ownership and the right to collect. <u>See</u> Tex. Bus. & Com. Code § 3.205(b) ("When indorsed in blank, an instrument becomes payable to bearer and may be negotiated by transfer of possession alone until specially indorsed."); <u>Kiggundu v. Mortg. Elec. Registration Sys. Inc.</u>, 469 F. App'x 330, 331–32 (5th Cir. 2012). Absent an infirmity not apparent from the face of the Note and the indorsement, Defendant is the holder of the Note with the right to enforce the Note.

      "Moreover, under Texas law, the mortgage follows the note." <u>Kiggundu</u>, 469 F. App'x at 332 (citing <u>Lawson v. Gibbs</u>, 591 S.W.2d 292, 294 (Tex. App. 1979)); <u>United States v. Vahlco Corp.</u>, 720 F.2d 885, 891 (5th Cir. 1983)); <u>see also</u> Tex. Bus. & Com. Code § 9.203(g); <u>id.</u> cmt. 9 ("Subsection (g) codifies the common-law rule that a transfer of an obligation secured by a security interest or other lien on personal or real property also transfers the security interest or lien."). Thus, if Defendant is holder of the Note, the Deed of Trust has not been "separated" from the Note because it follows the Note.

II.    <u>Sufficiency of the Allegations in the FAC</u>

      In the FAC, Plaintiff challenges the assignment of the Deed of Trust and transfer of the Note to Defendant by asserting "causes of action" for (1) quiet

title, (2) "UCC violations," (3) declaratory relief, and (4) injunctive relief.  (See
FAC.)  For the reasons explained below, each fails to state a claim.

      A.     Standing to Challenge Assignment

          As a preliminary matter, Defendant asserts that Plaintiff lacks
standing to challenge the assignment of the Deed of Trust and Note.  The Court
acknowledges that numerous courts within this circuit have held that a
plaintiff-mortgagor does not have standing to assert claims on the basis of an
allegedly invalid assignment to which it was not a party.  See, e.g., DeFranceschi v.
Wells Fargo Bank, N.A., 837 F. Supp. 2d 616, 623 (N.D. Tex. 2011).  Other
courts, however, have held that the plaintiff may have standing, depending on the
nature of the challenges asserted.  See, e.g., Routh, 2013 WL 427393, at *9.  This
Court falls into the latter category.  See Saucedo v. Deutsche Bank Nat'l Trust Co.,
SA-12-CV-868, 2013 WL 656240, at *4 (W.D. Tex. Feb. 20, 2013).

          Under Texas law, "the only interest or right which an obligor of a
claim has in the instrument of assignment is to insure himself that he will not have
to pay the same claim twice."  Tri-Cities Constr., Inc. v. Am. Nat'l Ins. Co., 523
S.W.2d 426, 430 (Tex. Civ. App. 1975).  For the purposes of standing, therefore,
the relevant distinction lies in whether the particular assignment is brought on
grounds that render the assignment "void" or merely "voidable."  See id.; Swain v.

<u>Wiley College</u>, 74 S.W.3d 143, 146 (Tex. App. 2002).  A void contract is "invalid or unlawful from its inception" and therefore cannot be enforced.  17A C.J.S. Contracts § 169.  A voidable contract, on the other hand, "is one where one or more of the parties have the power, by the manifestation of an election to do so, to avoid the legal relations created by the contract."  <u>Id.</u>  Accordingly, only the parties to a voidable contract may seek to avoid its enforcement.

Thus, a mortgagor who was not a party to an assignment between mortgagees only has standing to challenge that assignment if it is void.  In the instant case, because Plaintiff's standing turns on the nature of his various challenges to the assignment of the Deed of Trust and Note, Plaintiff's standing is discussed below in conjunction with those claims.

B.     <u>Quiet Title</u>

A suit to quiet title is an equitable action in which the plaintiff seeks to remove from his title a cloud created by an allegedly invalid claim.  <u>Florey v. Estate of McConnell</u>, 212 S.W.3d 439, 448 (Tex. App. 2006).  A "cloud" on legal title includes any deed, contract, judgment lien or other instrument, not void on its face, that purports to convey an interest in or makes any charge upon the land of the true owner, the invalidity of which would require proof.  <u>Wright v. Matthews</u>, 26 S.W.3d 575, 578 (Tex. App. 2000).  "In a suit to remove a cloud from his title,

the plaintiff has the burden of supplying the proof necessary to establish his superior equity and right to relief." Hahn v. Love, 321 S.W.3d 517, 531 (Tex. App. 2009). "The effect of a suit to quiet title is to declare invalid or ineffective the defendant's claim to title." Gordon v. W. Houston Trees, Ltd., 352 S.W.3d 32, 42 (Tex. App. 2011).

To state a quiet title claim, a plaintiff must show: (1) an interest in a specific property; (2) title to the property is affected by a claim by the defendant; and (3) the claim, although facially valid, is invalid or unenforceable. U.S. Nat'l Bank Ass'n v. Johnson, No. 01-10-00837-CV, 2011 WL 6938507, at *3 (Tex. App. Dec. 30, 2011) (citing Sadler v. Duvall, 815 S.W.2d 285, 293 n. 2 (Tex. App. 1991)). A plaintiff further "must allege right, title, or ownership in himself or herself with sufficient certainty to enable the court to see he or she has a right of ownership that will warrant judicial interference." Wright, 26 S.W.3d at 578.

In the instant case, Plaintiff alleges that he is the owner of the Subject Property, which is encumbered by a mortgage. (See FAC ¶ 3.) This appears to be sufficient to establish an interest in property for purposes of the first element of an action to quiet title. See Mortg. Elec. Registration Sys., Inc. v. Groves, No. 14-10-00090-CV, 2011 WL 1364070, at *4 (Tex. App. Apr. 12, 2011) (holding that plaintiff's allegation that "she owns the property by virtue of her recorded deed"

14

was a sufficient interest in property for the purposes of a quiet title action).  It is an "error" to require a party to demonstrate "fee simple or [an] uncontestable interest to prevail in a suit to remove cloud on title or to quiet title." <u>Katz v. Rodriguez</u>, 563 S.W.2d 627, 630 (Tex. Civ. App. 1977).  While the Court is troubled by the fact that Plaintiff has not alleged that he has satisfied his obligations under the mortgage, this does not appear to be a requirement under Texas law to stating a claim for quiet title.

The second element of a claim for quiet title, "whether title to the property is affected by a claim by the defendant," is adequately alleged in this case. <u>See</u> <u>Johnson</u>, 2011 WL 6938507, at *3.  Because Defendant claims the right to foreclose on the Subject Property pursuant to the assignment of the Deed of Trust, this is a "cloud" on Plaintiff's interest in the property.  <u>See</u> <u>Routh</u>, 2013 WL 427393, at *4.

However, Plaintiff fails to plead sufficient facts to support the third element of quiet title—namely, that "the claim, although facially valid, is invalid or unenforceable." <u>See</u> <u>Johnson</u>, 2011 WL 6938507, at *3.  Plaintiff's case rests on the allegation that, although Defendant appears to have a right to foreclose on the Subject Property based on its possession of the Note (indorsed in blank) and the assignment of the Deed of Trust, Defendant is in reality not authorized to foreclose

for reasons not apparent on the face of these documents.  More specifically,

Plaintiff challenges the assignment of these documents on the grounds that: (1) the

mortgage was securitized in a "Mortgage Pool Trust," and the assignment of both

the Deed of Trust and Note violated the terms of the Trust's Pooling and Servicing

Agreement; and (2) the assistant secretary who signed the assignment of the Deed

of Trust on behalf of MERS lacked authority to do so.  (See id. at ¶¶ 5–9.)

However, for the reasons explained below, all of these fail as a basis to invalidate

Defendant's claim on the Subject Property, and therefore Plaintiff fails to state a

claim for quiet title.

i.     <u>Violation of Pooling and Servicing Agreement</u>

Plaintiff alleges that the mortgage "may" have been "securitized" in a

"Mortgage Pool Trust."  (FAC ¶ 5.)  He conjectures that the trust would have had a

Pooling and Servicing Agreement ("PSA") "which would not allow for transfer of

the [N]ote the subject of this suit after 120 days of closing."  (Id.)  He concludes

any attempt to transfer the Note would therefore be in violation of the PSA.  (Id.)

Plaintiff's allegations regarding the PSA are entirely conclusory.

First, the FAC states only that the mortgage "may" have been securitized; Plaintiff

does not allege that the loan was actually transferred into the pool.  Second,

Plaintiff does not allege a specific date on which the PSA "closed," so his assertion

16

that the transfer of the Note would have occurred <u>after</u> that date is speculative. Third, even assuming that the transfer of the Note was done after the "closing" date of the trust in violation of the PSA, Plaintiff cites no legal authority suggesting such a transfer would render the assignment void or even voidable.  Thus, Plaintiff fails to state a claim for quiet title on this ground.

Moreover, due to the vagueness of the allegations in the FAC regarding the PSA, it is unclear whether Plaintiff's allegations would render the assignment void or voidable.  However, this Court need not decide whether Plaintiff has standing to challenge the purportedly invalid assignment in order to reach the merits of Plaintiff's claims.  A federal court may not bypass the question of Article III standing—which goes to the court's own jurisdiction—but may assume <u>statutory</u> standing in order to reach the merits of a case.[5]  <u>See</u> <u>Steel Co. v. Citizens for a Better Env't</u>, 523 U.S. 83, 94, 97 (1998) (rejecting the practice of "assuming" standing for the purpose of deciding the merits, but distinguishing between statutory standing and Article III standing); <u>see also</u> <u>Verizon Commc'ns</u>

---

[5]  Defendant contests Plaintiff's standing to challenge the assignment according to principles of contract law.  This cannot properly be labeled "statutory standing" because it involves principles of common law; but, like statutory standing, goes to whether the law "on which the claim rests properly can be understood as granting persons in the plaintiff's position a right to judicial relief." <u>Warth v. Seldin</u>, 422 U.S. 490, 500 (1975).

Inc. v. Law Offices of Curtis v. Trinko, LLP, 540 U.S. 398, 416 n. 5 (2004)
(observing that because the Court concluded that the plaintiff's complaint failed to
state a claim under the Sherman Act, it was unnecessary to consider whether the
plaintiff had antitrust standing); Taylor v. Acxiom Corp., 612 F.3d 325, 339–40
(5th Cir. 2010) (noting that the court need not address statutory standing because it
affirmed the district court's dismissal under Federal Rule of Civil Procedure
12(b)(6)).  Thus, assuming, without deciding, that Plaintiff has standing to
challenge the assignment on grounds that it violated the PSA, the Court concludes
that Plaintiff has failed to state a claim upon which relief can be granted.

ii.    Lack of Authority to Execute Assignment

Plaintiff contends that the assignment of the Deed of Trust is invalid
because Maria L. Decker, who signed on behalf of MERS, is not an "assistant
secretary" of MERS.  (FAC ¶ 5.)  Although not specifically alleged in the FAC,
Plaintiff argues that Ms. Decker is a "robosigner" in his Response to the Motion to
Dismiss.  (See doc. # 17 at 7.)

However, the mere allegation that Decker was not a MERS employee
cannot by itself support a cause of action.  MERS generally relies on its members
to have someone on their own staff become a MERS officer with the authority to
sign documents on behalf of MERS.  Cervantes v. Countrywide Home Loans, Inc.,

18

656 F.3d 1034, 1040 (9th Cir. 2011) (citations omitted). "As a result, most of the actions taken in MERS's own name are carried out by staff at the companies that sell and buy the beneficial interest in the loans." Id. The FAC does not provide any facts corroborating Plaintiff's speculative conclusion that Decker lacked authority to sign on behalf of MERS or any other indicia of impropriety on the face of the assignment. Because Plaintiff appears to aver some kind of fraud, he has failed to allege with particularity the circumstances constituting the fraud as required by Federal Rule of Civil Procedure 9(b).[6] As such, Plaintiff fails to state a claim for quiet title on this ground.

Moreover, it appears that Plaintiff's allegations would render the assignment "voidable" rather than "void" under Texas law, and Plaintiff therefore lacks standing to challenge the assignment on this ground. Under Texas law, deeds obtained by fraud or mutual mistake are voidable rather than void. Poag v. Flories, 317 S.W.3d 820, 826 (Tex. App. 2010); see Nobles v. Marcus, 533 S.W.2d 923, 925 (Tex. 1976) (finding that a deed procured by fraud is voidable—not void—by the grantor); Williams v. Glash, 789 S.W.2d 261, 264 (Tex. 1990) (finding that when parties to an agreement have contracted under a mutual misconception of

---

[6] "Rule 9(b) applies by its plain language to all averments of fraud, whether they are part of a claim of fraud or not." Lone Star Ladies Inv. Club v. Schlotzsky's Inc., 238 F.3d 363, 368 (5th Cir. 2001).

material fact, the agreement is voidable under the doctrine of mutual mistake).  A suit to set aside a deed obtained by fraud can only be maintained by the defrauded party.  Nobles, 533 S.W.2d at 927 (citing Smith v. Carter, 45 S.W.2d 398, 400 (Tex. Civ. App. 1932)).

By contrast, a deed that is forged is void.  Lighthouse Church of Cloverleaf v. Tex. Bank, 889 S.W.2d 595, 603 (Tex. App. 1994).  The Texas Supreme Court has held that, "when a person signs his true name, purporting to act as the agent of another, he generally has not committed a forgery."  Nobles, 533 S.W.2d at 926.  It further explained:

> An agent may commit forgery by signing an instrument in disobedience of his instructions or in improper exercise of authority, but one who executes an instrument purporting on its face to be executed by him as an agent, when in fact he has no authority to execute such instrument, is not guilty of forgery.

Id. at 927 (citation omitted).

In the instant case, according to the face of the assignment, it appears that Ms. Decker, acting as an agent of MERS, signed her true name to the assignment before a notary.  If MERS had knowledge that Ms. Decker executed the assignment on its behalf, but somehow she was not properly its "agent" because she was not an "employee," the assignment would not be a forgery and therefore would be voidable.  If Defendant conspired with Ms. Decker to carry out the

20

assignment without MERS' knowledge or consent, this seems to suggest that the

assignment would be a forgery and therefore void.  Because Plaintiff does not

allege that MERS did not have knowledge of Ms. Decker's actions or disapproved

of them, the Court determines that Plaintiff's allegations that Ms. Decker merely

lacked authority to sign on behalf of MERS would render the assignment voidable.

Thus, Plaintiff lacks standing to challenge the assignment of the Deed of Trust on

this ground.

     C.    <u>Violations of Texas Uniform Commercial Code</u>

Plaintiff brings a cause of action for "UCC violations," or violations

of the Texas Uniform Commercial Code, codified by the Texas Legislature in the

Texas Business and Commerce Code.  More specifically, Plaintiff alleges that

Defendant is not the holder of the Note and "cannot prove all of the . . . elements of

holder status," citing to § 3.301, § 3.309, and § 3.418(d) of the Texas Business and

Commerce Code.  (FAC ¶ 14.)  Plaintiff also alleges that, "[p]ursuant to § 3.203 of

the Texas Business and Commerce Code, Defendant Bank has no right to enforce

the instrument due to the fraud and illegal acts of transferring the note and deed of

trust."  (<u>Id.</u>)

Section 3.301 of the Texas Business and Commerce Code defines a

"[p]erson entitled to enforce" an instrument as one who is "(i) the holder of the

instrument, (ii) a nonholder in possession of the instrument who has the rights of a holder, or (iii) a person not in possession of the instrument who is entitled to enforce the instrument pursuant to Section 3.309 or 3.418(d)."  Tex. Bus. & Com. Code § 3.301.  The mere allegation that Defendant is not the "holder" of the Note because it does not meet the statutory definition of a "person entitled to enforce" an instrument under § 3.301 does not appear to provide an <u>independent</u> cause of action to Plaintiff.  Plaintiff does not, for example, seek a declaration that Defendant is not the holder of the Note under § 3.301.  However, even if § 3.301 does provide a cause of action, Plaintiff has not stated a claim on this ground because, as explained above, Plaintiff has not pleaded sufficient facts to indicate the transfer of the Note to Defendant was invalid.

Additionally, although Plaintiff cites § 3.309 and § 3.418(d) of the Texas Business and Commerce Code, he provides no explanation whatsoever how those provisions apply to the instant case.  Section 3.309 applies to the enforcement of a "lost" instrument, and Plaintiff has not pleaded facts to indicate that the Note is or was "lost."  Section 3.418(d) applies to an instrument that is "paid or accepted by mistake," and Plaintiff has not pleaded any facts to indicate Defendant acquired the Note in this fashion.  Plaintiff therefore fails to state a claim under § 3.309 and § 3.418(d).

22

Plaintiff also invokes § 3.203 of the Texas Business and Commerce Code, which states that a "transferee cannot acquire rights of a holder in due course by a transfer, directly or indirectly, from a holder in due course if the transferee engaged in fraud or illegality affecting the instrument." Tex. Bus. & Com. Code § 3.203. Because, as explained above, Plaintiff has failed to sufficiently allege Defendant engaged in fraud or illegality concerning the transfer of the Note, he fails to state a claim on this basis.

Finally, the Court notes that Plaintiff's reliance on the Texas Uniform Commercial Code as a means to prevent the foreclosure sale is misplaced. As discussed above, Defendant need not prove it is the holder of the Note in order to foreclose on the Subject Property pursuant to the Texas Property Code.

D.    <u>Declaratory Relief</u>

In the instant case, Plaintiff seeks a declaratory judgment finding that (1) Defendant is not the proper assignee and holder of the Note and Deed of Trust, and (2) the foreclosure sale is void. (FAC ¶ 13.)

To be entitled to declaratory relief under the Federal Declaratory Judgment Act,[7] 28 U.S.C. §§ 2201–2202, a plaintiff must allege facts

---

[7]    To the extent Plaintiff seeks declaratory relief under the Texas Declaratory Judgment Act, Tex. Civ. Prac. & Rem. Code § 37.009, he fails to state a claim. The Fifth Circuit has held that the Texas Declaratory Judgment Act is a procedural

demonstrating that there exists "a substantial and continuing controversy between the two adverse parties."  Bauer v. Texas, 341 F.3d 352, 358 (5th Cir. 2003).  The Act does not create substantive rights; it is merely a procedural device that enhances the remedies available to plaintiffs in federal court.  Skelly Oil Co. v. Phillips Petroleum Co., 339 U.S. 667, 671–72 (1950); Appling County v. Municipal Elec. Auth. of Georgia, 621 F.2d 1301, 1303 (5th Cir. 1980).

        Plaintiff's allegations regarding the invalidity of the assignment of the Deed of Trust and Note fail to state a claim.  Thus, in the absence of a live substantive claim for quiet title or "UCC violations," Plaintiff's request for a declaratory judgment must be dismissed.  See, e.g., Marsh v. JPMorgan Chase Bank, N.A., 888 F. Supp. 2d 805, 815 (W.D. Tex. 2012).  Additionally, a declaration finding that the foreclose sale is void is premature because no such sale has occurred.

        E.    Injunctive Relief

        Finally, Plaintiff's request for a preliminary injunction also fails.  Plaintiff may not seek a preliminary injunction in a complaint.  Pursuant to Local Rule CV–65, "[a]n application for a temporary restraining order or preliminary

---

rule that does not apply in federal court.  See Utica Lloyd's of Tex. v. Mitchell, 138 F.3d 208, 210 (5th Cir. 1998).

injunction shall be made in an instrument separate from the complaint."  Moreover, to obtain a preliminary injunction, a plaintiff must demonstrate, among other things, a likelihood of success on the merits of his or her claim.  See Harris Cnty. v. CarMax Auto Superstores, Inc., 177 F.3d 306, 312 (5th Cir. 1999).  Because Plaintiff has not pleaded a single viable cause of action, he cannot make this showing and his request for injunctive relief fails.  See Pajooh v. Harmon, 82 F. App'x 898, 899 (5th Cir. 2003) (affirming the district court's denial of injunctive relief when plaintiff failed to state a claim).

III.   Motion to Amend

        "Under Rule 15(a), 'leave to amend shall be freely given when justice so requires,' and should be granted absent some justification for refusal."  Willard v. Humana Health Plan of Tex. Inc., 336 F.3d 375, 386 (5th Cir. 2003) (quoting Foman v. Davis, 371 U.S. 178, 182 (1962)).  A court may deny a motion for leave to amend if there is "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed [or] undue prejudice to the opposing party by virtue of allowance of the amendment."  Id. (quoting Foman, 371 U.S. at 182).

        However, while the lenient standard of Rule 15(a) applies to motions for leave to amend filed within the deadline for amendment set by the scheduling

order, "Rule 16(b) governs amendment of pleadings after a scheduling order deadline has expired."  S & W Enters., L.L.C. v. SouthTrust Bank of Ala., NA, 315 F.3d 533, 536 (5th Cir. 2003).  When a motion for leave to amend is filed after the applicable deadline, "[o]nly upon the movant's demonstration of good cause to modify the scheduling order will the more liberal standard of Rule 15(a) apply to the district court's decision to grant or deny leave."  Id.

Plaintiff seeks leave to file a second proposed Second Amended Complaint ("PSAC").  (Doc. # 29.)  However, the deadline for Plaintiff to seek leave to amend his pleadings passed on July 9, 2012.[8]  (See doc. # 9.)  Plaintiff filed his first motion to amend on November 7, 2012 (doc. # 14) and the present motion to amend on January 22, 2013.  Because Plaintiff's request for leave to amend was filed after the applicable deadline set by the Scheduling Order had expired, Plaintiff must show good cause to modify the Scheduling Order.  Whether "good cause" exists primarily centers on the diligence of the party seeking to modify the scheduling order.  See Marathon Fin. Ins., Inc. v. Ford Motor Co., 591 F.3d 458, 470 (5th Cir. 2009).  Four factors are relevant to good cause: "(1) the

---

[8] Defendant filed a motion to abate all future deadlines on January 16, 2013 (doc. # 27), which the Court granted.  (Doc. # 28.)  This did not change the deadline for Plaintiff to amend his pleadings, which expired some six months before the Court granted the motion.

explanation for the failure to timely move for leave to amend; (2) the importance of the amendment; (3) potential prejudice in allowing the amendment; and (4) the availability of a continuance to cure such prejudice."  Id. (citations omitted) (internal quotation marks omitted).

        In this case, Plaintiff has failed to make a showing of "good cause." In fact, in his Motion for Leave of Court to Amend, Plaintiff provides no explanation whatsoever for his delay in seeking leave to amend; instead, he merely states that he wishes to correct "typographical errors and to add multiple causes of action."  (Doc. # 29.)  Plaintiff does not point to any newly discovered facts or provide any explain why he could not have timely requested leave to add his proposed new causes of action.  At this point in the proceedings, more than six months after the deadline passed for amendment, to allow Plaintiff to add new claims would prejudice Defendant by further delaying the final disposition of the case.  Thus, because Plaintiff has failed to demonstrate good cause for amendment, Plaintiff's motion for leave to file the PSAC is therefore denied.

        The Court also notes that Plaintiff's motion fares no better under the more generous standard of Rule 15(a).  The court need not grant a plaintiff leave to amend where amendment would be futile.  See Foman, 371 U.S. at 182 (holding that a court may deny leave to amend for reasons such as "undue delay, bad faith

or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, <u>futility of amendment</u>") (emphasis added). The PSAC includes claims for quiet title, "UCC violations," and declaratory and injunctive relief that are essentially identical to the prior FAC.  Because the PSAC fails to raise any new factual allegations that would cure the deficiencies of the FAC, amendment is futile.  The PSAC also contains two new causes of action, including a claim for relief under the Texas Civil Practice and Remedies Code and a claim for breach of contract.  For the reasons explained below, Plaintiff fails to state a claim for each; therefore, amendment is futile.

   A. <u>Texas Civil Practice & Remedies Code § 12.002</u>

    In the PSAC, Plaintiff alleges Defendant violated Chapter 12 of the Texas Civil Practice and Remedies Code by filing with the Office of the Bexar County Clerk a fraudulent assignment of the Deed of Trust.  (PSAC ¶ 18.)  Section 12.002(a) provides:

> A person may not make, present, or use a document or other record with:
>
> (1) knowledge that the document or other record is a fraudulent court record or a fraudulent lien or claim against real or personal property or an interest in real or personal property;
>
> (2) intent that the document or other record be given the same legal effect as a court record or document of a court created by or established under the

constitution or laws of this state or the United States or another entity listed in Section 37.01, Penal Code, evidencing a valid lien or claim against real or personal property or an interest in real or personal property; and

(3) intent to cause another person to suffer:

      (A) physical injury;

      (B) financial injury; or

      (C) mental anguish or emotional distress.

Tex. Civ. Prac. & Rem. Code § 12.002(a).

Defendant argues that the assignment of the Deed of Trust is not a "lien or claim" within the meaning of § 12.002(a)(1) because it is not a "lien." (See doc. # 32 at 5.)  Defendant is indeed correct that the assignment of the Deed of Trust is not a lien.[9]  However, the language of the statute is more expansive than Defendant suggests because it includes a "lien or claim against real or personal property or an interest in real or personal property."  Id. § 12.002(a)(1) (emphasis added).

In Marsh v. JPMorgan Chase Bank, N.A., the court analyzed whether the assignment of a deed of trust qualifies as a "lien or claim" under § 12.002.  It noted that Texas courts had not yet considered this question and proceeded to

_____

    [9] Under § 12.001, a "lien" is defined as "a claim in property for the payment of a debt and includes a security interest."  Tex. Civ. Prac. & Rem. Code § 12.001.

examine the legislative history of Chapter 12, ultimately concluding that the statute

only applies to fraudulent documents "purporting to <u>create</u> a lien or claim against

real or personal property."  888 F. Supp. 2d at 813 (quoting House Comm. on

Criminal Jurisprudence, Bill Analysis, Tex. H.B. 1184, 75th Leg., R.S. (1997))

(emphasis added)).  The court held that an assignment of a deed of trust falls

outside the scope of Chapter 12 because it does not <u>create</u> a lien or claim, but

"merely purports to transfer an existing deed of trust from one entity to another."

<u>Id.</u>  This Court previously adopted the reasoning and holding of <u>Marsh</u> on this

issue.  <u>See</u> <u>Saucedo</u>, 2013 WL 656240, at *5.

    However, it has come to the Court's attention that the Texas Court of

Appeals recently issued an unpublished opinion that sheds further light on this

matter.  <u>See</u> <u>Bernard v. Bank of Am., N.A.</u>, No. 04–12–00088–CV, 2013 WL

441749 (Tex. App. Feb. 6, 2013).  In <u>Bernard v. Bank of America, N.A.</u>, the court

affirmed the entry of summary judgment under § 12.002(a) against homeowners

who unilaterally drafted, signed, and filed a "'Substitution of Trustee" document in

an attempt to prevent a bank from lawfully foreclosing on a lien against their

property.  <u>Id.</u> at *4.  In its analysis, the court assumes that the "Substitution of

Trustee" document was a "claim" against real property within the meaning of

Chapter 12.  <u>See id.</u>  A "Substitution of Trustee" document, like an assignment of a

30

deed of trust, transfers an existing claim in property from one entity to another and does not "create" a new claim on property in the sense <u>Marsh</u> would require. Thus, this Court concludes that the <u>Marsh</u> court's reading of § 12.002(a) is overly narrow and finds that an assignment of a deed of trust does qualify as a "claim" under that section. This finding is supported by the plain language of the statute, which by its terms includes not only claims against real property, but also claims against "an <u>interest</u> in real . . . property." Tex. Civ. Prac. & Rem. Code § 12.002(a). A deed of trust is an interest in real property, and the assignment of a deed of trust therefore creates a claim in that interest.

However, for the reasons discussed above, Plaintiff has failed to plausibly allege facts to indicate that Defendant made, presented, or used a <u>fraudulent</u> document. Moreover, to the extent that Plaintiff merely parrots the language of § 12.002(a), his statements are legal conclusions, not allegations of fact, and are therefore insufficient to state a plausible claim for relief under the Civil Practice and Remedies Code. <u>See</u> <u>Twombly</u>, 550 U.S. at 556–57 (finding that a plaintiff must do more than recite the formulaic elements of a cause of action).

  B. <u>Breach of Contract</u>

The PSAC also alleges a cause of action for breach of contract,

31

alleging that the mortgage was sold by the original lender into a credit default swap and was paid by insurance companies.  (PSAC ¶ 20.)  Plaintiff contends that, when this occurred, he was no longer required to pay under the terms of the Note and Deed of Trust because he is entitled to "proper credit" for payments made by the insurance companies.  (Id.)  He further alleges that Defendant has therefore breached the terms of the Note and Deed of Trust by attempting to enforce them. (Id.)

Under Texas law, "[t]he elements in a claim for breach of contract are: (1) a valid contract; (2) the plaintiff performed or tendered performance; (3) the defendant breached the contract; and (4) the plaintiff was damaged as a result of the breach."  Richter v. Wagner Oil Co., 90 S.W.3d 890, 898 (Tex. App. 2002). "A breach of contract occurs when a party fails to perform an act that it has expressly or impliedly promised to perform."  Case Corp. v. Hi–Class Bus. Sys. of Am., Inc., 184 S.W.3d 760, 769–70 (Tex. App. 2005).

Plaintiff's claim for breach of contract fails because he has not alleged that he fulfilled his obligations under the contract.  Instead, he merely alleges that "Defendant has been paid in part."  (PSAC ¶ 20.)  Plaintiff likewise does not allege that the payments from the insurance companies, even if paid on his behalf, would have been sufficient to constitute performance of the contract.  Accordingly,

32

Plaintiff fails to state a claim for breach of contract, and the Court finds that it would be futile to allow amendment.

IV.   Motion to Compel

Because the Court is dismissing the FAC for failure to state a claim and denying Plaintiff's Motion for Leave of Court to Amend, this action is dismissed with prejudice.  Plaintiff's Motion to Compel is therefore denied as moot.

CONCLUSION

For the reasons stated above, the Court **GRANTS** Defendant's Motion for Judgment on the Pleadings (doc. # 13), **DENIES** Plaintiff's Motion for Leave of Court to Amend Pleadings (doc. # 29), and **DENIES AS MOOT** Plaintiff's Motion to Compel (doc. # 33).  This action is **DISMISSED WITH PREJUDICE**.

IT IS SO ORDERED.

DATED: San Antonio, Texas, April 17, 2013.

_____
David Alan Ezra
Senior United States District Judge